**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louis L. SEIFFERT, Jr., Defendant-**
**Appellant.**

**No. 73-2148.**

United States Court of Appeals,
Fifth Circuit.

Oct. 4, 1974.

David L. Perry, J. Robert McKissick, James DeAnda, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Henry J. Novak, Jr., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, District Judge.

WISDOM, Circuit Judge:

The defendant-appellant, Louis L. Seiffert, Jr., was chairman of the board of First State Bank of Aransas Pass, Texas, in 1969 when the bank failed and the Federal Deposit Insurance Corporation (FDIC) liquidated the bank's holdings. Seiffert filed voluntary petitions in bankruptcy for himself and three corporations which he controlled. On December 10, 1969, the first meeting of creditors was held before the referee in bankruptcy. The defendant testified at that meeting and on February 9, 1970, gave his deposition in connection with a claim by the FDIC on a fidelity bond.

Shortly thereafter, he was indicted along with the ex-president of First State Bank, for misappropriating funds of a federally insured bank in violation of 18 U.S.C. § 656. A jury found Seiffert guilty of the offenses charged in counts 2, 3 and 4 of the indictment; mistrial was entered as to counts 1 and 5. On September 30, 1971, the trial court sentenced him to imprisonment for three years on each of the three counts, the sentences to run consecutively.

On appeal, this Court reversed the defendant's conviction on the ground that the 1970 Amendment to section 7(a)(10) of the Bankruptcy Act, 11 U. S.C. § 25(a)(10),[1] the immunity provision of the statute, was applicable to the defendant. We held that the defendant was entitled to both use and derivative use immunity and remanded the case for an inquiry into the source of the evidence introduced by the Government at trial. United States v. Seiffert, 5 Cir. 1972, 463 F.2d 1089.

On remand, Seiffert contended that The Honorable Owen D. Cox, who had presided at his trial, should have granted his motion for a new trial based on the allegation that Judge Cox was disqualified in that he had attended the first meeting of creditors as a private practitioner representing two of the creditors, before his appointment as a federal district judge. Seiffert also argued that the immunity provision of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), applied to his deposition to certain financial and business records, and that the Government failed to estab-

---

1. "The bankrupt shall (1) attend at the first meeting of his creditors, at the hearing upon objections, if any, to his application for a discharge and at such other times as the court shall order . . . (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all mat-

ters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge. . . ."

11 U.S.C. Supp. § 25(a)(1), (10), as amended, October 15, 1970, Pub.L. 91–452, Title II, § 207, 84 Stat. 929 (Organized Crime Control Act of 1970).

lish a source independent of the immunized material for all the evidence it introduced at trial against him. On remand, Judge Cox denied the motion for a new trial but recused himself from presiding at the hearing on the source of the Government's evidence. The Honorable Carl O. Bue, who presided at that hearing, held that the Government had not used the bankrupt's testimony protected by 11 U.S.C. § 25(a)(10). United States v. Seiffert, S.D.Tex.1973, 357 F.Supp. 801. We affirm.

## I.

Disqualification of federal judges is governed by 28 U.S.C. § 455:

> Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

"Congress made it expressly plain that it placed in the justice or judge the responsibility for making the determination 'in his opinion' that he should disqualify himself." Kinnear-Weed Corp. v. Humble, 5 Cir. 1971, 441 F.2d 631, 635.

It is not contended that Judge Cox had a "substantial interest", was "of counsel" in the sense that he represented parties in the case before him, or that he had been a material witness. The sole question is whether he abused the discretion vested in him by the statute in his determination that his entering an appearance, as a practicing lawyer, at the first meeting of creditors in a voluntary bankruptcy proceedings was not "so related to or connected with any party or his attorney as to render it improper" for him to sit in the bankrupt's subsequent criminal trial.

After the remand, at the hearing on the motion for a new trial, Judge Cox denied the motion and explained his minimal involvement in the bankruptcy proceedings.[2] Even on the assumptions

---

2. Judge Cox stated from the bench:

My representation of private clients in those proceedings occurred about one year before I was sworn in as a Federal Judge. After refreshing my memory by a review of the files of the two clients which I represented . . . I wish to state for the record that I did attend the morning session of the first meeting of the creditors in the bankruptcy proceedings. But I do not recall definitely whether or not I returned for the meeting after lunch. My impression is that I did not return because of the nature of the concern of my clients, which was minimal, and I thought I would be wasting my clients' money. However, for the purpose of this matter, we will assume that I attended the entire meeting all day long.

[One of the two clients'] interest was negligible, and after a conference with him after the first session, there was nothing further to be done in connection with his representation. . . .

For [the other client], I filed a claim asking the Trustee to abandon a certain piece of real estate in Portland, Texas, because the bankrupt estate of [one of

the corporations involved in the bankruptcy proceedings] had no interest in it.

. . .

. . .

At the time the immunity question . . . arose in the trial of [the appellant's] case, and just prior to the commencement of this jury trial, I did not give any consideration as to whether or not I had participated in any part of the bankruptcy proceedings. It just never occurred to me, so at that time, I was not consciously aware, although the defendant says I should have been, of the fact that I had actually participated to some extent in the several bankruptcy proceedings, this lack of recollection may or may not be excusable. Nevertheless, the first actual recollection in this regard was when I first read the Motion of the defendant requesting that I disqualify myself.

At the time of the Seiffert trial and now, I have no independent recollection of the testimony presented at such first meeting except . . . as related to my clients. But for the purpose of this Motion, we will assume that I have a full recollection of what went on during such first meeting of the creditors.

Judge Cox was willing to make for the purpose of considering the motion [3] (and nothing we say here is meant to imply that he had to make those assumptions), he concluded that a new trial should not be granted. He did recuse himself, however, from presiding over the inquiry into the source of the Government's evidence.

The only suggestion of prejudice that Seiffert attributes to Judge Cox is stated in the appellant's brief as follows:

> Here we are faced with the situation of the trial judge being present when the testimony was given by [the appellant at the first meeting], observing his demeanor and forming an opinion as to the efficacy, sincerity, candidness, and even the veracity of the testimony—not in the proper confines of a court of law in his role as a disinterested, impartial United States District Judge, but as a partisan advocate representing clients whose interests are in conflict with those of the appellant-bankrupt. To expect or require anyone to put aside these intangible impressions at a future date and assume a completely disinterested role asks too much.

■■ The appellant's own characterization of any impressions Judge Cox might have carried away as "intangible" is apt. We have examined the transcript of the first meeting of creditors. Judge Cox did not participate in the questioning, very little of which appears related in any way to the two transactions in which the two clients he was representing were involved. He stated that he could not remember whether he had attended the afternoon session at all, and that at the trial he had no recollection even of having participated in the first meeting or any of the testimony that was given during the meeting. We are left with the assertion that Judge Cox might have acquired "intangible impressions" of the appellant's demeanor in his testimony at the first meeting relating to matters which at best related indirectly to the transactions that were the subject matter of the indictment under which he was tried. Mere prior knowledge of some facts concerning a litigant (which Judge Cox denied having) is not in itself necessarily sufficient to require disqualification. *cf.* Roberson v. United States, 5 Cir. 1958, 249 F.2d 737, 741. And the impressions of the bankrupt's demeanor and candor at the first meeting he might have obtained (but denied recalling) do not constitute a connection or relationship to a party sufficient to make it improper to sit at the trial on the merits.

The American Bar Association's Code of Judicial Conduct, Canon 3(C)(1)(a), provides:

## C. DISQUALIFICATION

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings; . . .

This canon expresses the principle Mr. Justice Frankfurter stated in Public Utilities Commission v. Pollock, 1952, 343 U.S. 451, 467, 72 S.Ct. 813, 823, 96 L.Ed.2d 1068: "the administration of justice should reasonably appear to be disinterested as well as to be so in fact." Even under that rigid standard, Judge Cox's impartiality in the appellant's case cannot reasonably be questioned. He had no knowledge of disputed evidentiary facts, and there was no reasonable basis for inferring that he was biased or prejudiced.

## II.

The first meeting of creditors in the bankruptcy proceedings involved in this case was held December 10, 1969. On February 9, 1970, Seiffert appeared in

---

3. See footnote 2.

the law offices of his own counsel, in Houston, Texas, and was deposed. Also present were counsel for some of his creditors, primarily those interested in the Federal Deposit Insurance Corporation bond claim: counsel for the FDIC, counsel for the Corpus Christi State National Bank, counsel for the Capital National Bank of Austin, counsel for Rallee Corporation and Weben Industries, counsel for the trustees in bankruptcy, and the liquidator for the FDIC assigned to administer the liquidation of the bank, which had failed in September of 1969. There is no indication anywhere in the record of this case that the bankrupt's appearance and testimony at this deposition of February 9, 1970, were otherwise than voluntary; the record does not show that he appeared under order of the court, and the Bankruptcy Act, 11 U.S.C. § 44(b), specifically preserves the right to take depositions without order of the court, under the law relating to the taking of depositions in civil litigation generally.

At the time this deposition was taken, the Bankruptcy Act, 11 U.S.C. § 25(a), provided, in part:

> The bankrupt shall . . . (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; *but no testimony given by him shall be offered in evidence against him* in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge.
> . . . (Emphasis supplied.)

In October 1970, the italicized portion of the excerpt of 11 U.S.C. § 25(a) quoted above was amended to provide:

> . . . but no testimony, *or any evidence which is directly or indirectly derived from such testimony,* given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge. .. . .
> (Added language italicized.)

This change was effected by the Organized Crime Control Act of 1970, 84 Stat. 926, 929. The House Report on the bill noted, "It is contemplated that the title will enable effective displacement of the privilege against self-incrimination by granting protection coextensive with the privilege; that is, protection against the use of compelled testimony directly or indirectly against the witness, in a criminal proceeding." 1970 U.S.Code Cong. & Admin.News p. 4008. *See also* Comment, Kastigar v. United States: The Required Scope of Immunity, 58 Va.L.Rev. 1099 (1972); Comment, Standards for Exclusion in Immunity Cases after Kastigar *and* Zicarelli, 82 Yale L.J. 171 (1972). The Act affected existing provisions relating to immunity in a wide variety of statutes in addition to the Bankruptcy Act. *See id.* pp. 4019–4022.

Two questions concerning 11 U.S.C. § 25(a) confront us. First, does the statute apply to testimony in bankruptcy proceedings given before the effective date of the amendment? Second, does it apply here to the bankrupt's voluntarily given deposition of February 9 in connection with the bankruptcy proceedings he had voluntarily instituted, and to documents and business records to which the trustee held title?

■ The first question was answered in the affirmative by this Court in the earlier appeal when it stated:

> . . . we agree, that the amendment was effective at the time of trial and gave him [appellant] use and derivative use immunity because it was a procedural or remedial change and as such became immediately applicable to pending cases.

463 F.2d at 1091. The Second Circuit has recently declined to follow this holding giving retroactive effect to the 1970 amendment. United States v. Dornau, 2 Cir., 491 F.2d 473. Another panel of our own Court, without citing *Seiffert*, has also declined to apply the 1970 amendment retroactively. United States v. Goodwin, 5 Cir. 1972, 470 F.2d 893, 903–904. Ordinarily, the holding of the earlier appeal of this case would control our decision under the doctrine of law of the case. It was, of course, binding on Judge Bue, who conducted the inquiry into the source of the Government's evidence on remand, after Judge Cox had recused himself from that task. *See* White v. Murtha, 5 Cir. 1967, 377 F.2d 428, 431–432. And it should be followed in later proceedings in this Court unless it is shown to be clearly erroneous and would work a manifest injustice. *See* Roe & Co. v. Armour & Co., 5 Cir. 1969, 414 F.2d 862, 869–870. If clear error and injustice are apparent, we undoubtedly have the power to alter the holding of the earlier appeal.

*Goodwin* raises substantial doubts regarding the validity of the earlier holding. See also McCarthy v. Arndstein, 1924, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 in which Mr. Justice Brandeis, for the Court, held that immunity conferred by the Bankruptcy Act (prior to the 1970 amendment) was inadequate to preclude a claim of the Fifth Amendment privilege and inadequate to permit commitment for contempt or other means of compelling testimony; because the immunity was not coextensive with the privilege. More recently, in Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, the Supreme Court has narrowed the required immunity by holding that a prosecution based upon the transaction may be permitted when "the evidence [the prosecution] proposes to use is derived from a legitimate source wholly independent of the compelled testimony". *Id.* at 460, 92 S.Ct. at 1665, 32 L.Ed.2d 226. But that decision did not alter the state of the law prior to the 1970 amendment. It

was clear that the Fifth Amendment privilege could be asserted in bankruptcy proceedings, and that the Bankruptcy Act immunity was insufficient to permit *compelled* testimony. That was the law when the appellant as voluntary bankrupt gave his deposition, and at no time during the course of it did he claim the privilege. There is doubt, therefore, that in the earlier appeal of this case the 1970 amendment was "procedural or remedial" and therefore "immediately applicable to pending cases," 463 F.2d at 1091; for the Fifth Amendment privilege itself was available prior to the 1970 amendment, and that privilege is as potent a "remedy" against the evils of compelled testimony as the use and derivative use immunity that supplants it under the statutory changes. In view of the disposition we make of the other contentions, however, changing the law of the case would not alter the result we reach.

Assuming, then, that the 1970 amendment was applicable to cases pending when it was enacted, we turn to the question whether the Government discharged its burden of establishing the source of its evidence and negating that any of it was derived from the protected bankruptcy testimony. In the earlier appeal, this Court noted that "[i]f the Government can affirmatively show that it did not directly or indirectly use Seiffert's bankruptcy testimony as a lead to other evidence his conviction must stand." 463 F.2d at 1092.

 The opinion did not draw a distinction between testimony given at the first meeting of creditors and testimony contained in appellant's deposition of February 9, 1970. On remand, Judge Bue, necessarily confronted with this question, concluded that the immunity provision was "inapplicable to voluntary deposition testimony given by a [voluntary] bankrupt." 357 F.Supp. at 808. We sustain his conclusion. One who voluntarily invokes the protection of the Bankruptcy Act reaps substantial benefits in terms of absolution from indebtedness. We think that Congress, in en-

acting the 1970 amendments, did not mean to augment those benefits by mitigating the impact of criminal sanctions which might be applicable to the financial transactions that necessarily become a part of the focus of the bankruptcy proceedings he himself has initiated. As Judge Bue noted, there are three occasions under the Act when some compulsion, in the form of contempt or denial of the discharge, may be brought to bear upon the bankrupt: the first meeting of creditors, the hearing upon objections to the discharge,[4] and such other occasions as the court shall order.

The appellant argues that the February 9 deposition should be considered a continuation of the first meeting of creditors, or, alternatively, we must assume that it was taken under order of court because the Government has failed to prove that it was not. (Presumably such proof would have had to take the form of production of the docket entries or testimony of the referee, or both.) We reject both contentions.

■ We note, first, that the February 9 deposition should be considered a presence of the referee and, as appellant concedes, the statute itself, 11 U.S.C. §§ 91(b) and 736, requires the presence of the referee at the first meeting of creditors and by implication at any continuation of such a meeting. Moreover, that certain questions of relevancy were referred to the referee does not change the character of the deposition, any more than the certification of deposition questions in a civil suit renders the testimony given there "compelled". Second, the February 9 session centered upon the FDIC bond claim, and it is this sort of examination, primarily in furtherance of a particular creditor's claim, that is generally thought to be an improper occasion for a court order. *See* 2 Collier on Bankruptcy § 21.11.

■ The other contention, that we must assume the examination to have been conducted under court order, is less meritorious than the first. The record does not reveal that it was raised before Judge Bue, and, in any event, we believe that in the circumstances of this case, despite the general rule that the burden of proving the independent source of all evidence introduced is on the Government, the appellant had as ready and as easy access to the means of proof as the Government, and, having failed to introduce any evidence that the examination was other than voluntary, the assertion he makes now that it was compelled under court order must be rejected.

The February 9 deposition was neither a continuation of the first meeting of creditors nor an examination under court order. It was therefore not one of those instances provided for by the Bankruptcy Act, 11 U.S.C. § 25(a)(10), in which testimony may be compelled in exchange for the statutory immunity. It follows that that immunity does not extend to the February 9 testimony.

■ Nor does that immunity extend, as the appellant would have it, to certain of his books and records introduced in evidence against him at trial. When he initiated the voluntary bankruptcy proceedings, title to these books and records passed immediately by operation of law to the trustee under 11 U.S.C. § 110(a). Incriminating evidence contained within them is governed, therefore, by a wholly different principle from that governing testimony, and the bankrupt may claim no Fifth Amendment privilege with respect to such evidence, with the possible exception of special circumstances suggested below. *See* McCarthy v. Arndstein, 1924, 226 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158, and cases cited therein. The Supreme Court has recently reemphasized the fact that one who voluntarily initiates bankruptcy proceedings in his own behalf avails himself of a benefit provided by Congress, not a right. United

4. We note in passing that the validity of the related provision withdrawing the statutory immunity from testimony at the hearing on objection to the discharge is suspect.

States v. Kras, 1973, 409 U.S. 434, 93 S. Ct. 631, 34 L.Ed.2d 626. The Court has underscored the fact that "the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him", in holding that a taxpayer could not invoke the privilege to prevent the production of his business and tax records that he voluntarily placed in the custody of his accountant. Couch v. United States, 1973, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548, 554. In the case before us, there is no suggestion of personal testimonial compulsion directed toward Seiffert in the voluntary bankruptcy proceedings. It is doubtful whether the documentary evidence known and available to the Government at the time the FDIC began liquidating the bank, before the institution of the bankruptcy proceedings, but even if some of this evidence were derived from those proceedings, the Fifth Amendment privilege would not have been violated. We would, of course, have a different case if it were shown that compelled testimony led to the investigation of records which could take on an incriminating cast only upon analysis and assembly in a certain manner suggested by such testimony. But that is not this case. As set forth more fully below, the Government was aware of the basic contours of the transactions by which the bank was defrauded well in advance of the December 10, 1969, testimony at the first meeting of creditors, and the fact that certain negotiable instruments and the business records relating to them were part of the records to which the trustee took title does not for that reason mean that they could not be offered in evidence as proof of those transactions, as the appellant's argument seems to imply.

As we have shown, the immunity provided by 11 U.S.C. § 25(a)(10) does not extend to the February 9 deposition nor to the business records of the bankrupt. Having thus fixed the parameters of the immunity provision to some extent, at

least, we turn to the Government's proof relating to the source of its evidence offered at trial.

■ Judge Bue correctly held that the burden of proof upon the Government was to demonstrate by a preponderance of the evidence an independent source for all evidence introduced. Though ancillary to the process of proof in the criminal trial, this inquiry into the source of the Government's evidence need not be satisfied by proof beyond a reasonable doubt. The Supreme Court has recently held in a closely analogous area that the voluntariness of a confession need be proved only by a preponderance of the evidence, not by the higher standard governing proof of the elements of an actual crime, since voluntariness is an inquiry distinct from guilt or innocence, and since "the purpose that a voluntariness hearing is designed to serve has nothing whatever to do with improving the reliability of jury verdicts". Lego v. Twomey, 1972, 404 U.S. 477, 486, 92 S.Ct. 619, 625, 30 L. Ed.2d 618, 626.

■ Turning, finally, to the testimony at the hearing below regarding the source of the Government's evidence at trial, we have no difficulty in affirming Judge Bue's determination that the Government demonstrated by a preponderance of the evidence that its proof at trial was untainted. As he noted, all the witnesses with the exception of two were interviewed by the Federal Bureau of Investigation before the date of the first meeting of creditors. The two witnesses interviewed after that meeting were a director and the president of the failed bank of which the defendant was chairman of the board. They had of course been involved in their official capacities in approving some of the suspect transactions that led Mr. Thompson, the regional director of the FDIC, to initiate the FBI investigation of the bank failure in the first place, well in advance of the first meeting of creditors. The appellant has argued repeat-

edly that documentary exhibits numbered 110 through 118, introduced at trial, were derived from the deposition testimony. We have held that the immunity provision does not extend to such a voluntary deposition. Even if it did, Judge Bue's finding that these exhibits were in the possession of the trustee in bankruptcy before the first meeting of creditors, and that the other documentary exhibits "were derived from the records of the defunct bank, which were in the possession and custody of the FDIC liquidator . . . . or from the various witnesses at the time they were interviewed", would lend ample support to his conclusion that the Government had an independent source for this evidence. 357 F.Supp. 809. Moreover, Judge Bue found that the FBI agent assigned to investigate the case had detailed discussions with the FDIC liquidator assigned to liquidate the failed bank in September and October of 1969 regarding the facts upon which each count of the indictment was based.

In short, considering the record of the trial, the testimony given in the first meeting of creditors, the transcript of the February 10 deposition, and the transcript of the hearing on remand to inquire into the source of the evidence, we must agree with Judge Bue that "[t]he conclusion is inevitable that [Seiffert's] bankruptcy testimony was not used to search out other testimony subsequently used at the defendant's trial". 357 F.Supp. at 810.

. Accordingly, Judge Cox's order denying a new trial and Judge Bue's order affirming the conviction after the evidentiary hearing must be affirmed, and the cause remanded to the district court for disposition of the motion for a new trial on the basis of newly discovered evidence that has been pending during the decision of this appeal.

Affirmed and remanded.