UNITED STATES of America, Plaintiff-Appellee,

v.

Richard Lee WILLIS, Defendant-Appellant.

No. 77–5838.

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1978.

---

Eugene C. Fitzhugh, Little Rock, Ark. (Court-appointed), for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., Jamie C. Boyd, U. S. Atty., Ronald P. Guyer, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, RONEY and GEE, Circuit Judges.

GEWIN, Circuit Judge:

Richard Lee Willis was found guilty by a jury of conspiracy to defraud the United States by making false statements to a government agency and to defraud certain lending institutions by making false statements in violation of 18 U.S.C. §§ 371, 1001, and 1014. He appeals from the judgment of conviction asserting numerous errors by the trial court. We affirm.

In 1959 appellant acquired and began operating a commercial and trade school known as San Antonio Commercial College (SACC). James C. Williams was employed

by Willis in 1960 to work at the school.[1] Stanley Dennis worked at SACC as a bookkeeper and accountant from 1965 to 1967.[2]

In 1969, Willis incorporated Educational Career Systems (ECS) in Arizona and was its majority shareholder. Willis became President of the company and Williams Vice-President. In 1969, Dennis again became associated with Willis as Secretary-Treasurer of ECS. Willis transferred his ownership in SACC to ECS and in 1970 the company acquired Gregg Business School of Arizona in Phoenix, Arizona. During the following two years, ECS came into ownership of several additional commercial schools.

Shortly after its incorporation, Educational Career Systems was approved as a lender under the Federally Insured Student Loan Program (FISL). Under this program, the federal government, through the Department of Health, Education, and Welfare, guarantees the repayment of student loans made to students by eligible lending institutions. Eligible lenders can include banks, savings and loan associations, and schools that have applied for and obtained approval from HEW.

To procure a federally insured loan, a student, generally with the lender's aid, applies to HEW for the loan insurance. Once HEW has approved the application and the lender has paid the insurance premium, the student signs a promissory note to the lender. The lender then disburses the funds to the student or the school and signs a Lenders Manifest with HEW, showing disbursement of the funds. The promissory note is negotiable and may be transferred from one eligible lender to another.

The purpose of the loans insured by the program is to pay for the student's education. Once a participating student completes the school term for which a loan is received, the school has earned the funds and may use them for any purpose. If the student fails to complete the term, a refund liability is created. The school has not earned the monies and must make a refund to either the student or the lending institution holding the student's note. If a student defaults on a note, the lender, after using due diligence to collect, may obtain payment of the loan from the government.

SACC began participating in the FISL program in 1969 or 1970 with ECS as its approved lender. SACC salesmen actively recruited students to enroll, informing them of the loan program. On the request of such salesmen, the students signed loan applications and blank promissory notes payable to ECS, and school employees completed the forms.[3]

Despite its active use of loan programs, ECS did not have sufficient funds to distribute the money loaned to participating students or to two of its schools, SACC and Gregg Business School. Instead, once the loan was insured, the company sold the notes to various lending institutions, including Texas State Bank of San Antonio, Texas, and United States Life Savings of California. From 1970 to 1972, when both schools were closed, ECS sold in excess of $1,000,000 in student notes to U. S. Life Savings and over $125,000 to Texas State Bank.

Among notes sold to the lenders were those of students who had never appeared for courses or failed to complete them, creating a refund liability by ECS. By October 1972, Educational Career Systems' total refund liability was $892,525.00 of which HEW has paid $813,210.00 due to student default.

Despite the fact that many of the loans were liabilities, Willis, Williams and Dennis utilized the funds as if the students had completed the courses and the schools had earned the money. For example, in 1972 Willis purchased a parking lot with proceeds from the sale of 115 FISL notes to

1. Williams was indicted as a co-conspirator and entered a plea of guilty.

2. Dennis was indicted as a co-conspirator and subsequently pled guilty.

3. Defendant Williams supervised the completion of the forms.

Texas State Bank. 96 of the 115 notes were filed as being in default and 57 of the students had dropped out of school before their notes were sold to Texas State Bank.

The United States contended at trial that appellant Willis conspired with Williams and Dennis to defraud the federal government by diverting funds procured through the FISL program for improper purposes. The government further alleged that appellant conspired to make false statements to HEW in the Lenders Manifest that the student borrowers were actively attending school and to make the same misrepresentations to other lending institutions in order to negotiate the notes.

Appellant Willis raises several issues on appeal. After careful consideration we find his contentions to be without merit. He first argues that he was immune from criminal prosecution under 11 U.S.C. § 25(a) (1966) because he filed a voluntary bankruptcy proceeding in the Eastern District of Arkansas in April, 1975 and the government used evidence from that civil action to convict him in the case at bar. The record shows that after Willis filed his bankruptcy petition, the Department of HEW filed a civil action against him in the bankruptcy proceeding to obtain a personal judgment. Appellant contends that the government improperly comingled the bankruptcy action with its concurrent criminal investigation by using such proceeding to obtain evidence for its criminal case. On the fourth day of trial of the instant case, appellant raised this ground by objecting to the introduction of the government's evidence. The trial court treated the objection as a motion to suppress and after an evidentiary hearing, denied the motion as untimely. Alternatively, the court resolved that Willis was not immune from prosecution and hence the proof was admissible because the government had established an evidentiary source independent of the bankruptcy proceedings.

■ He asserts that his in-trial objection was a proper and timely objection and not a motion to suppress. We are convinced, however, that the trial court cor-

rectly characterized the objection as a motion to suppress prosecutorial evidence. A trial court's factual findings on a motion to suppress must be sustained unless shown to be clearly erroneous. *United States v. Griffin,* 555 F.2d 1323, 1324 (5th Cir. 1977); *United States v. James,* 528 F.2d 999, 1018 (5th Cir. 1976), *cert. denied sub nom. Henry v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). Appellant has failed to make this showing. Rule 12(b)(3) Fed.R. Crim.P. requires motions to suppress to "be raised prior to trial" or be waived, unless good cause is shown. Appellant untimely filed the motion on the fourth day of trial. He has failed to establish good cause for his delay in making the motion. His counsel in the instant case represented him in the bankruptcy proceedings and was fully cognizant of all facts pertinent to the suppression issue.

■ Moreover, we agree with the trial court's finding that appellant was not immune from criminal prosecution. The Bankruptcy Act, 11 U.S.C. § 25(a) provides that the bankrupt must submit to an examination concerning the conduct of his business, the cause of his bankruptcy, etc. " . . . but no testimony given by him shall be offered in evidence against him in any criminal proceeding . . ." This circuit has previously examined the scope of this derivative use immunity provision in *United States v. McDonnel,* 550 F.2d 1010 (5th Cir. 1977), *cert. pending,* and *United States v. Seiffert,* 501 F.2d 974 (5th Cir. 1974). In *McDonnel* and *Seiffert* the court determined that if the government can establish by a preponderance of the evidence an independent source of the evidence, the proof is admissible at a subsequent criminal proceeding, even though it may be the same evidence as adduced at the bankruptcy proceeding. 550 F.2d at 1012; 501 F.2d at 982. Here, the government demonstrated on the record and the trial court found that the prosecution came by its proof from an independent source. The criminal investigation of Willis had been underway for approximately two years when he voluntarily filed a bankruptcy proceeding. As in *Seiffert,*

all of the witnesses were interviewed before the bankruptcy proceeding and all FBI reports were completed eighteen months before appellant's filing of the bankruptcy petition. Furthermore, the documentary evidence used at trial was obtained from leads found in a letter written by Willis to HEW's Office of Education in Dallas, Texas two years before the proceeding. It is evident that the trial court's conclusion that the government's evidence was untainted is amply supported by the record.

Appellant next contends that the trial court erred in denying pre-trial motions to dismiss the indictment for insufficiency and to dismiss for preindictment delay. Willis argues that the indictment was insufficient in that it was vague and failed to allege a conspiratorial agreement between appellant, Dennis, and Williams. An additional defect asserted by Willis is the omission from the indictment of any overt acts of a criminal nature.

■ Rule 7(c) of the Federal Rules of Criminal Procedure states that an indictment shall "be a plain, concise, and definite written statement of the essential facts constituting the offense charged   .   .   . It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement." In testing the indictment under this standard, its validity is ascertained from reading the indictment as a whole and must be determined by practical, rather than technical considerations. *United States v. Markham,* 537 F.2d 187, 192 (5th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); *United States v. Miranda,* 494 F.2d 783, 788 (5th Cir. 1974), *cert. denied,* 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974).

■ A careful reading of the indictment reveals that it satisfies the requirements of 7(c). The indictment alleges the essential elements of the conspiracy offense, and specifies each conspirator involved and the overt acts committed in

furtherance of the conspiracy. Appellant's argument that criminal overt acts must be alleged in the indictment is without merit. It is settled law that overt acts charged in an indictment for conspiracy need not be criminal; rather, they may be non-criminal acts which further the conspiracy. *United States v. Archbold-Newball,* 554 F.2d 665, 684 (5th Cir. 1977), *citing Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084–85, 1 L.Ed.2d 1356, 1384 (1957). We believe the trial court was correct in finding the indictment to be sufficiently specific.[4]

Appellant's preindictment delay argument stems from the fact that the government commenced its investigation in 1975 but did not obtain an indictment until May 11, 1977. He contends that the delay violated his due process rights and prejudiced him in that personal and business records essential to his defense were lost during the interim.

■ It has been the rule of this circuit that the burden of establishing impermissible preindictment delay lies with the defendant and that the accused must show that: (1) substantial prejudice resulted from the delay and (2) the delay was an intentional measure in order to gain a technical advantage. *United States v. Catano,* 553 F.2d 497, 501 (5th Cir. 1977); *United States v. Butts,* 524 F.2d 975, 977 (5th Cir. 1975). The court derived this two-pronged test from a construction of the Supreme Court's reasoning and holding in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

In the recent decision of *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the Supreme Court developed the tenants enunciated in *Marion,* emphasizing the importance of actual prejudice and the reason for the delay.

> Thus *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must

4. Using the vagueness argument, appellant contends that the trial court erred in denying his pre-trial motion for a bill of particulars. As

stated in the opinion, we find this contention meritless.

consider the reasons for the delay as well as the prejudice to the accused . . . the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process" to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California,* 342 U.S. 165, 170, 72 S.Ct. 205, 96 L.Ed. 183 (1952). We are to determine only whether the action complained of here, compelling respondent to stand trial after the Government delayed indictment to investigate further violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 and which define "the community's sense of fair play and decency" *Rochin v. California, supra* at 173, 72 S.Ct. 205 [at 210] 96 L.Ed. 183 [at 191].

431 U.S. at 790, 97 S.Ct. at 2947, 52 L.Ed.2d at 759.

■ We are satisfied, upon a review of the record that appellant has failed to show the actual prejudice required by *Lovasco* and our decisions. He makes the general allegation that through the loss of his personal records and the records of ECS, he has suffered undue harm to his defense. The evidence reveals, however, that all records concerning appellant's alleged misstatements were in the government's possession and that such evidence was turned over to Willis. Furthermore, many of appellant's personal records were in the hands of the prosecution and he was afforded duplicates of them. We are satisfied that the trial court correctly found that Willis failed to show the actual and specific instances of prejudice, requisite to a finding of impermissible preindictment delay.[5] As this court has said, "actual prejudice and not merely the real possibility of prejudice inherent in any extended delay . . . is a necessary element which must be shown before the restraints of the due process clause will be applied to bar a prosecution because of a delay." *United States v. McGough,* 510 F.2d 598, 604 (5th Cir. 1975).[6]

■ Willis further asserts as error the trial court's refusal to permit him and his counsel to be present at an in-chambers conference between the trial judge, counsel for the government, co-conspirator Dennis and his counsel. The conference occurred at appellant's trial prior to selection of the jury. According to the record, an agreement apparently was reached at the conference between Dennis and the government, whereby Dennis would move for a severance, plead guilty and testify as a government witness in appellant's trial. The trial court granted the motion for severance and Dennis subsequently testified against appellant. Willis argues that he was prejudiced by not being allowed to be present at the conference. He contends that, at a minimum, the trial court should have advised him and his counsel of what was to transpire at the conference and afforded him an opportunity to object.

---

5. Appellant relies on *United States v. Parrott,* 248 F.Supp. 196 (D.D.C.1965), wherein the district court held that "where the delay is substantial, prejudice may be presumed and the government bears the burden of showing that no prejudice has resulted." 248 F.Supp. at 203. This court has refused to adopt *Parrott* as the law of this circuit. *Kroll v. United States,* 433 F.2d 1282, 1286 (5th Cir. 1970).

6. Citing prejudice from loss of his records, appellant advances an additional contention that the trial court erred in denying his motion to inspect all minutes of the grand jury proceedings. We disagree. The government furnished appellant his grand jury testimony and all Jencks Act materials under 18 U.S.C. § 3500. Under Rule 6(e)(2)(C)(ii) Fed.Rules of Crim. Proc., a defendant is not entitled to further discovery of grand jury proceedings, absent a showing "that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Appellant has made no such showing nor has he established the abuse of discretion necessary to successfully attack a discovery ruling. *See United States v. Newcomb,* 488 F.2d 190, 192 (5th Cir.), *cert. denied, sub nom. Sadler v. United States,* 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974).

We cannot agree that the trial court committed error in denying appellant and his counsel admittance to the conference. Under Rule 43 Fed.Rules Crim.Proc., a defendant generally has the right to be present at every stage of the trial. The rule further states:

A defendant need not be present

\*   \*   \*   \*   \*   \*

(3) At a conference or argument upon a question of law.

Rule 43(c) Fed.Rule Crim.Proc.

██ We interpret this provision to mean that a defendant has no absolute right to be present at a conference with a co-defendant. Moreover, appellant's counsel was afforded the opportunity to cross-examine Dennis about the conference. Counsel availed himself of this opportunity and questioned Dennis at some length concerning the details of the agreement made with the government at the proceeding. It would have been preferable to permit counsel for Willis to be present. In-chamber conferences held by a trial judge for plea bargaining purposes with only government counsel and a co-defendant present may tend to give the appearance of partiality by the court. 8B Moore's Federal Practice, ¶ 43.03[2] at 43–22–23 (2d ed. 1978). Appellant, however, has shown no actual prejudice, and with the opportunity for thorough cross-examination, his interests were adequately protected.

██ As a final contention, Willis argues that there was insufficient evidence to support his conviction. The standard of review is that "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1941). In conspiracy cases the government is required to prove the essential elements of the conspiracy offense, an agreement between two or more persons to commit a crime and an overt act by one in furtherance of the agreement. *United States v. Gutierrez,* 559 F.2d 1278, 1280 (5th Cir. 1977); *United States v. Barrerra,* 547 F.2d 1250, 1256 (5th Cir. 1977).

██ In the instant case there was sufficient evidence from which the jury reasonably could conclude that Willis, Dennis, and Williams conspired to defraud the United States and lending institutions of monies through the FISL program, and performed acts which furthered that end. The evidence established that Willis founded and was majority shareholder of Educational Career Systems, which owned San Antonio Commercial College and other trade schools. Williams and Dennis were the company's other officers. Students were solicited to enroll at the schools and encouraged to take advantage of the loan program. They were requested to sign applications for loan insurance and blank promissory notes payable to ECS. A substantial number of the students never appeared to take the courses at the schools or dropped out of the courses before their completion. Willis was cognizant of these liabilities, but nevertheless negotiated the notes secured by government guarantees and used the proceeds for his personal benefit. This proof, when considered in the light most favorable to the government, clearly supports a guilty verdict.[7]

AFFIRMED.

---

7. As a corollary to this issue, Willis asserts that the prosecution was time barred because all incriminating overt acts occurred more than five years before the indictment was filed on May 11, 1977. We deem it sufficient to say that the indictment alleged and the government proved that numerous overt acts in furtherance of the conspiracy occurred between May 11, 1972 and May, 1977. Only one such act was required to sustain the prosecution. *United States v. Davis,* 533 F.2d 921, 926 (5th Cir. 1976).