**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louis L. SEIFFERT, Jr., Defendant-**
**Appellant.**

**No. 71–2991.**

United States Court of Appeals,
Fifth Circuit.

July 21, 1972.

Rehearing Denied Oct. 10, 1972.

James DeAnda, David L. Perry, Edwards & DeAnda, Attorneys at Law, Corpus Christi, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Theo W. Pinson, III, Mary L. Sinderson, Asst. U. S. Attys., Jack Provine, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before DYER, Circuit Judge, and SKELTON, Judge *, and INGRAHAM, Circuit Judge.

DYER, Circuit Judge:

Seiffert seeks a reversal of his conviction by a jury for misappropriating funds of a federally insured bank, 18 U.S.C.A. § 656, claiming error in the Government's alleged use of his bankruptcy testimony in violation of 11 U.S.C.A. § 25(a) (10) (1972 Supp.). Because we find that a sufficient showing was not made concerning the source of the Government's evidence, we remand the case for further findings.

At the time of the failure of the First State Bank of Aransas Pass in 1969 Seiffert was the chairman of the board. The Federal Deposit Insurance Corporation administered the bank's liquidation. The Federal Bureau of Investigation concerned itself with the possibility of criminal violations in connection with the bank's failure.

After the bank failed, Seiffert filed voluntary petitions in bankruptcy for himself and for three corporations in which he owned an interest. At the first meeting of creditors in December, 1969, he testified as the bankrupt. Representatives of the FDIC were present representing the bank as a creditor of Seiffert. FDIC also deposed Seiffert in February, 1970 in connection with its claim under a fidelity bond.

In addition to the alleged use of his immunized testimony, Seiffert argues that he was collaterally impeached; that the prosecutor knowingly solicited a racially prejudicial remark from a witness; and that the court's supplemental

instructions and use of the "Allen" charge had the effect of coercing a verdict of guilty.[1]

Seiffert was indicted on March 9, 1970. 11 U.S.C.A. § 25(a) (10) was amended in October, 1970.[2] Seiffert was tried on August 6, 1971. He contends, and we agree, that the amendment was effective at the time of trial and gave him use and derivative use immunity because it was a procedural or remedial change and as such became immediately applicable to pending cases. See Turner v. United States, 5 Cir. 1969, 410 F.2d 837, 842. Prior to the amendment a bankrupt could, despite the mandatory language of the statute, assert his Fifth Amendment privilege and refuse to testify because the statute failed to afford complete immunity from prosecution. McCarthy v. Arndstein, 1924, 266 U.S. 34, 42, 45 S.Ct. 16, 69 L.Ed. 158; Arndstein v. McCarthy, 1920, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138. With the advent of the amendment to § 25(a) (10) a bankrupt can now be compelled to testify. As Kastigar v. United States, 1972, 406 U.S. 441, 92 S. Ct. 1653, 32 L.Ed.2d 212 [decided May 22, 1972], teaches, the use and derivative use immunity granted by the amendment is co-extensive with the privilege against self-incrimination granted by the Fifth Amendment.

Because the grant of immunity is co-extensive with the Fifth Amendment privilege, the amendment to § 25(a) (10) is procedural and not substantive. "[I]mmunity from use and derivative use 'leaves the witness and the Federal Government in substantially the same position as if the witness had

---

* Hon. Byron G. Skelton, U.S.Court of Claims, sitting by designation.

1. Seiffert also argues on appeal that his testimony given at the first meeting of creditors and his later deposition were not voluntary because he was not given the warnings required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We consider this contention frivolous because Seiffert was not even remotely in custody at the time.

2. Prior to the amendment the pertinent portion of the statute read,
. . . but no testimony given by him shall be offered in evidence against him in any criminal proceeding. . .
The statute, as amended, provides
'(10) . . . but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding . . .

claimed his privilege' in the absence of a grant of immunity." Kastigar v. United States, *supra* at 458, 459, 92 S.Ct. at 1664 citing Murphy v. Waterfront Comm'n, 1964, 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678.

■ That the amendment is applicable does not require a reversal. If the Government can affirmatively show that it did not directly or indirectly use Seiffert's bankruptcy testimony as a lead to other evidence his conviction must stand. The Government's attempt to do so at trial fell short of the mark. The prosecutor, the FBI agent who investigated the case, and the FDIC attorney all testified that they did not make direct nor indirect use of Seiffert's testimony. These conclusory statements are simply not enough to carry the burden.

. . . This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

Kastigar v. United States, *supra* at 460, 92 S.Ct. at 1665. The Government must show how it acquired all of the evidence admitted below.

This can be done without the effort and expense of a new trial. *See* United States v. Washington, 1969, 134 U.S. App.D.C. 135, 413 F.2d 409, 410; *cf.* Dyson v. Stein, 1971, 401 U.S. 200, 203, 91 S.Ct. 769, 27 L.Ed.2d 781; Byrne v. Karalexis, 1971, 401 U.S. 216, 220, 91 S. Ct. 777, 27 L.Ed.2d 792. Upon remand the district court shall conduct an inquiry to determine the source of the evidence introduced by the Government. If it was not acquired through the direct or indirect use of Seiffert's testimony, the conviction shall stand affirmed by this court as entered. If, however, any of the evidence is found to be tainted the judgment of conviction shall be reversed and Seiffert granted a new trial. *See* United States v. Roca-Alvarez, 5 Cir. 1971, 451 F.2d 843, 848; *cf.* United States v. Bryant, 1969, 137 U.S.App.D.C. 124, 420 F.2d 1327, 1335–1336.

■ We briefly consider the other contentions of Seiffert. We find no collateral impeachment of Seiffert by the Government's eliciting on cross-examination the fact that, although on direct he admitted receiving the proceeds of a loan made by the bank to another (an essential element of one of the crimes charged), he was also forced to admit that he previously testified to the contrary before a grand jury.

■ Seiffert next urges that the prosecutor invited a racially prejudicial response from a witness. It came about in this context. One of Seiffert's fellow directors informed the board that loans to themselves from the bank were too large and that they should be moved to other banks. Using this as a predicate the prosecutor asked the witness for Seiffert's response which was to the effect that if a member of the board could not borrow money from the bank, you couldn't get anybody but a Mexican to serve on the board of directors. Seiffert asserts that this unfairly prejudiced him because several jurors had Mexican-American surnames. While it may be that the evidence could have been developed with less pejorative language, it was relevant and contained the words that Seiffert himself used. The incident was not so prejudicial as to deprive him of a fair trial. *See* Scales v. United States, 1961, 367 U.S. 203, 256, 81 S.Ct. 1469, 6 L.Ed.2d 782.

Finally, we perceive no error in the court's supplemental instructions or the portion of the "Allen" charge which he utilized. *See* United States v. George, 5 Cir. 1971, 450 F.2d 269; United States v. Prentiss, 5 Cir. 1971, 446 F.2d 923.

Remanded with directions.