**UNITED STATES of America**

v.

**Raymond FILIBERTI and Frank Sacco.**

**Crim. No. H–300.**

United States District Court, D. Connecticut.

Dec. 4, 1973.

---

See also D.C., 353 F.Supp. 252.

Stewart H. Jones, U. S. Atty., Randolph C. Roeder, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Hubert Santos, Federal Public Defender, Hartford, Conn., for Raymond Filiberti.

Thomas Dennis, South Windsor, Conn., for Frank Sacco.

## RULING ON DEFENDANT FILIBERTI'S MOTION TO RECONSIDER

BLUMENFELD, Chief Judge.

Defendant Raymond Filiberti has moved that this court reconsider its ruling dated May 3, 1973, in light of the subsequent ruling in United States v. Dornau, 359 F.Supp. 684 (S.D.N.Y. 1973). For the reasons stated below, this motion is denied.

### I. FACTS

The facts relevant to this motion were set forth in this court's ruling dated May 3, 1973:

"After the filing of a petition of involuntary bankruptcy, Filiberti testified before the Referee in Bankruptcy Saul Seidman on October 7 and November 26, 1968, and again on January 19, 1970. On all three occasions he was accompanied by his attorney, but never did he claim the fifth amendment privilege against self-incrimination, as he was entitled to do at this proceeding. . . . At all his appearances his testimony disclosed copious inculpatory information. None of that testimony was presented to the grand jury which brought the indictment, but the government freely admits that information obtained from Filiberti's statements before the referee enabled it to uncover additional information which did form the basis of the indictment."

At the times Filiberti appeared before the Referee, Section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), provided that when a bankrupt so testified, "no testimony shall be offered in evidence against him in any criminal proceeding." In its ruling on May 3, 1973, this court held that the statutory grant of immunity under which Filiberti testified was limited to immunity from *direct* use of his testimony, and did not include immunity from *derivative* use of his testimony as well; *i. e.*, the then-existing statutory immunity was not the "use plus derivative use" immunity that the Supreme Court delineated as the scope of the fifth amendment privilege in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

### II. DISCUSSION

It is settled that one compelled to testify by a grant of immunity, after invoking the fifth amendment privilege, is constitutionally entitled to protection from "use plus derivative use" of his testimony. Kastigar v. United States, *supra*. It is equally evident that 11 U. S.C. § 25(a)(10) as presently constituted, following amendment by the Organized Crime Control Act of 1970, now

provides "use plus derivative use" immunity. Act of Oct. 15, 1970, P.L. 91–452, Title II, § 207, 84 Stat. 929. See H. Rep.No.91–1549, 91st Cong., 2d Sess. 1970, U.S.Code Cong. & Admin. News at pp. 4017–4018. Thus if Filiberti had been compelled to testify in Bankruptcy in 1968 and 1970 after invoking his fifth amendment privilege, he would have been entitled to "use plus derivative use" immunity. The same would be true if he had testified after the effective date of the Organized Crime Control Act amendment, regardless of whether he invoked the privilege or not. Yet neither is the case here. The precise question thus presented is: what is the scope of immunity for one who testified in Bankruptcy before the effective date of the Organized Crime Control Act amendment without invoking his fifth amendment privilege?

In United States v. Dornau, *supra,* the court was confronted with a situation virtually identical to the instant case: a bankrupt testified at a hearing in Bankruptcy before the effective date of the Organized Crime Control Act amendment to the Bankruptcy Act; he did not invoke his fifth amendment privilege; his testimony was indirectly used by the government in obtaining an indictment against him. The court held that such use was forbidden under Kastigar v. United States, *supra,* and dismissed the indictment. I am persuaded, however, that that result is neither required nor appropriate in the instant case.

First, the court in *Dornau* apparently applied the amended version of § 25(a)(10) to the case before it, rather than the version in effect in 1969 when the bankrupt testified. In an earlier

opinion which was part of the same proceedings, the court stated:

"On May 1, 1969, just six months before the indictment was filed, both defendants were compelled to testify before the Referee in Bankruptcy in the Ra-Dor proceedings, pursuant to Section 7b of the Bankrutpcy Act (11 U. S.C. § 25) At that time, their attorney asserted the immunity provisions of Section 7a(10) of the Act [11 U.S.C. § 25(a)(10)]. That section provides that 'no testimony, *or any evidence which is directly or indirectly derived from such testimony,* given by him shall be offered in evidence against him in any criminal proceeding, . . .'" (Emphasis added.)

United States v. Dornau, 356 F.Supp. 1091, 1098 (S.D.N.Y.1973). As noted earlier, however, on May 1, 1969, 11 U. S.C. § 25(a)(10) provided only that "no testimony given by [the bankrupt] shall be offered in evidence against him in any criminal proceeding . . . ." Not until the effective date of the Organized Crime Control Act amendment, sixty days after enactment of the Act on October 15, 1970, did 11 U.S.C. § 25(a) (10) provide the immunity from *derivative* use of testimony to which the *Dornau* court referred.[1]

The court may have proceeded on the theory that even if the older version of § 25(a)(10) was in effect when Dornau testified in 1969, the amended version would have been applicable at the time of Dornau's trial, and therefore dismissal was still required. Support for this position may be found in United States v. Seiffert, 463 F.2d 1089 (5th Cir. 1972). In my ruling on May 3, 1973, however, I held that Filiberti was *not* protected by the amendment to § 25(a)(10) enacted by the Organized

---

1. The statement immediately following the passage quoted above from the earlier *Dornau* opinion does not resolve the confusion: *"The Referee expressly indicated that it* [apparently, the amended version of § 25(a)(10)] *was applicable to the instant defendants* because they were being compelled to testify as officers of Ra-Dor. Whereupon, Peter and Fred Dornau pro-

ceeded to testify on two occasions in May 1969." (Emphasis added.) 356 F.Supp. at 1098. Of course, the Referee could not have indicated that the amended version of § 25(a)(10) was applicable to the defendants, since that version did not exist until more than a year after the defendants testified.

Crime Control Act of 1970. Like Dornau, Filiberti testified before the Referee in Bankruptcy in 1968 and 1970 *before* the effective date of the amendment. Section 260 of the Organized Crime Control Act of 1970 explicitly provides:

> "The provisions of part V of title 18, United States Code, added by title II of this Act, and the amendments and repeals made by title II of this Act, shall take effect on the *sixtieth day following the date of the enactment of this Act* [October 15, 1970]. No amendment to or repeal of any provision of law under title II of this Act shall affect any immunity to which any individual is entitled under such provision *by reason of any testimony or other information given before such day*." (Emphasis added.)

Act of Oct. 15, 1970, P.L. 91–452, Title II, § 260, 84 Stat. 931–932. See 18 U.S.C. § 6001 (1973). United States v. Seiffert, *supra,* inexplicably did not take Section 260 into account, and therefore I declined to follow *Seiffert* in my May 3 ruling. To the extent that *Dornau* follows *Seiffert* on this point, I likewise decline to follow it as well.[2]

Moreover, I am persuaded that the correct rule is stated in the reasoned opinion by the Court of Appeals for the Fifth Circuit in United States v. Goodwin, 470 F.2d 893 (5th Cir. 1972), cert. denied, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973). Goodwin, one of two defendants indicted for bankruptcy fraud, was in a position akin to that of Dornau and Filiberti: he testified at a hearing in Bankruptcy prior to the amendment of § 25(a)(10), he did not invoke his fifth amendment privilege, and his testimony was used derivatively by the government to obtain an indictment against him. The court cast a sharp eye at the precise situation in which Goodwin was placed:

> "It must also be remembered that the bankruptcy testimony here utilized was not obtained in appellant Goodwin's case over an assertion of the Fifth Amendment privilege not to testify nor in either appellants' case from an actual granting of immunity. Absent the statute, there would have been no occasion even to consider whether any immunity whatsoever existed. It must also be remembered that the part of the Fifth Amendment with which we are here concerned provides only that 'No person . . . shall be compelled in any criminal case to be a witness against himself.' The privilege may be waived if it is not asserted. United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376. Furthermore, it is undisputed that because the immunity granted by the old version of section 25(a)(10) was not a complete immunity, those protected by it remained free to claim their Fifth Amendment privilege. McCarthy v. Arndstein, 1924, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. If a person chose not to 'stand on the Fifth,' he could claim only as much protection from use of the testimony adduced as the statute

**2.** The *Dornau* court does not appear to have considered to any great extent the question whether a bankrupt who did not invoke the fifth amendment privilege, prior to the amendment of § 25(a)(10), in fact enjoys derivative use immunity in addition to direct use immunity. Instead, it primarily relied upon language in *Kastigar* for the proposition that the immunity (statutorily) granted Dornau prohibited the government from using his testimony " 'in any respect.' " 359 F.Supp. at 687. The court did not discuss the significance of the fact that in *Kastigar* the defendant had invoked his fifth amendment privilege (and subsequently was held in

contempt for refusal to testify), 406 U.S. at 442, 92 S.Ct. 1653, while in the case before it the bankrupt did not invoke the privilege but relied solely on the existing *statutory* grant of immunity. This omission on the court's part would be explained if it were assumed that the court operated on the belief that Dornau was entitled to the broader immunity granted in the amended version of § 25(a)(10). However, as indicated above, I have concluded that those who testified before the effective date of the Organized Crime Control Act amendment are not entitled to the derivative use immunity provided by the amendment.

itself granted. Absent some affirmative granting of immunity by the person taking the testimony, the witness faced two alternatives under the older version of the statute: he could choose to testify freely and then later claim whatever protection the statute afforded; or he could refuse to testify on the grounds that the answers sought might be incriminating."

470 F.2d at 903–904. Much as this court held in its ruling on May 3, 1973, the court in *Goodwin* concluded that under the old version of § 25(a)(10), one who failed to assert his fifth amendment privilege received immunity only from *direct* use of his testimony. In order to receive "use plus derivative use" immunity, he was required to "stand on the Fifth":

"This would be an entirely different case if appellants were appealing from a contempt citation entered upon a refusal to testify on the ground that the statute granted only 'pure use' immunity, rather than 'use and derivative use' immunity or 'transactional' immunity. When the Fifth Amendment is asserted, it can be overborne only by a grant of immunity coextensive with the scope of the privilege itself —'pure use' immunity would be insufficient. *See* Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212; Zicarelli v. New Jersey State Comm. of Investigation, 1972, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234. *See also* Piccirillo v. New York, 1971, 400 U.S. 548, 91 S. Ct. 520, 27 L.Ed.2d 596. But we see no constitutional infirmity in the Congress having chosen by the old version of section 25(a)(10) to grant only a very limited immunity to witnesses who fail to assert their Fifth Amendment rights and who have not formally been granted or promised any sort of immunity."

470 F.2d at 904.

Accordingly, the Motion to Reconsider is denied.

So ordered.