HOLLOWAY, Circuit Judge.
Appellant Beery brought separate appeals from two orders entered in this bankruptcy proceeding in Nos. 77-1991 and 78-1758. In addition, Beery filed a “Complaint and Petition for Injunctive Relief,” in No. 80-1577 in this court by which he sought to have us enjoin the disposition or transfer of Beery’s interests in certain property until the appeals are resolved. The two appeals and the complaint were consolidated here.
I
Beery originally filed a voluntary petition seeking relief under Chapter XI of the Bankruptcy Act on January 16, 1976. The case was automatically referred to the bankruptcy judge. Beery then filed a plan for an arrangement under Chapter XI, but during a hearing in April 1976, Beery refused to file verified schedules and statements pursuant to Bankruptcy Rules 11-11 and 11-12. Beery also stated that he was withdrawing his plan of arrangement and his Chapter XI petition.
Later during the same hearing on April 15, the bankruptcy judge converted the proceeding to one of straight bankruptcy, stating that Beery had failed to file the required verified statements and schedules and that Beery was effectively adjudicated a bankrupt. These rulings were memorialized in an order by the bankruptcy judge filed April 20 concluding that Beery was adjudicated a bankrupt and that the case proceed as a bankruptcy case.
Beery then filed a motion to reconsider the adjudication of bankruptcy. He apparently claimed that he was a farmer,[1] as defined by the Bankruptcy Act, and as such could not be adjudicated a bankrupt without his written consent. See 11 U.S.C. § 779 (1976); Bankruptcy Rule ll-42(e). In July 1977 the bankruptcy judge entered an order vacating his order of April 1976 insofar as necessary to have a de novo determination of the factual issue of whether Beery was a farmer when he filed his petition under Chapter XI. In August 1977 the bankruptcy judge recommended to the district court that the case be partially withdrawn for a de novo trial before the district court on this factual issue. The district judge entered an order partially withdrawing the case from the bankruptcy judge and an evidentiary hearing was held [hereinafter the “September 1977 hearing”]. The district judge entered an order concluding that Beery was not a farmer as defined by the Bankruptcy Act and overruling Beery’s motion for reconsideration of the bankruptcy judge’s orders converting the case to a straight bankruptcy proceeding and adjudicating Beery a bankrupt. Beery timely appealed from this order.
Beery also timely appealed an order entered by the district court in March 1978 affirming another order of the bankruptcy judge. The bankruptcy judge had denied Beery’s motion for a jury trial on the issues of insolvency and commission of an act of bankruptcy and also denied Beery’s motion for dismissal of Beery’s Chapter XI petition as moot.[2]
*709 On this appeal Beery asserts that numerous errors were committed by the bankruptcy judge, the district judge, or both, and seeks injunctive relief. We have considered all of Beery’s claims and find them to be without merit. Our reasons follow.
II
Beery first claims that the bankruptcy judge erred in converting his Chapter XI proceeding to a straight bankruptcy. He argues that the court was without jurisdiction to take any further action after Beery withdrew his Chapter XI petition, stating that once the petition was withdrawn, there was nothing to convert. (Brief of Appellant at 13-15, 23-24, 43).
We disagree. Jurisdiction of a Chapter XI proceeding is not lost upon the voluntary withdrawal of the petition. Bankruptcy Rule ll-42(a) prescribes the procedure to be taken when the debtor files a motion to dismiss. If the Chapter XI petition was originally filed under Rule 11-6, as was the case here, the court should “enter an order after hearing on notice dismissing the case or adjudicating him a bankrupt whichever may be in the best interest of the estate.” Rule ll-42(a)(2). Beery’s voluntary withdrawal, while not proffered in the form of a motion to dismiss, is considered as such. Thus on the withdrawal, the bankruptcy court did not lose jurisdiction but was required to enter an order dismissing the proceeding or adjudicating Beery a bankrupt after proper notice and hearing.
The bankruptcy court did enter an order adjudicating Beery a bankrupt but purported to take this action, not under Rule 11-42(a)(2), but under Rule ll-42(b)(l), a different subpart of the same rule, which provides:
The court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt if he has not been previously so adjudged, or directing that the bankruptcy case proceed, whichever may be in the best interest of the estate — ■
(1) for want of prosecution;
* * * * * *
The fact that the bankruptcy court entered its order with the finding of lack of prosecution under subpart (b)(1), and did not expressly deal with Beery’s motion to withdraw as a motion under (b)(1), is of no consequence. Both subparts (the former dealing with motions to dismiss, inter alia, and the latter dealing with lack of prosecution, inter alia) require that the court enter an order either adjudicating the debtor a bankrupt or dismissing the case, whichever may be in the best interest of the estate. The necessary finding that adjudication was in the best interest of the estate was made in any event.
The prerequisite for the bankruptcy judge’s action under Rule 11 — 42(b)(1), “for want of prosecution,” was clearly satisfied. The term was defined in the Advisory Committee Notes to Rule 11-42 as including, inter alia, the failure to file schedules and statements and the withdrawal or abandonment of a plan. 11 U.S.C. at p. 1483 (1976). During the April 15 hearing Beery stated that he was unwilling to sign and verify the petitions and schedules and that he was withdrawing his arrangement plan and his Chapter XI petition. Beery’s actions amounted to a lack of prosecution.
In addition, we cannot say that the bankruptcy court was in error in finding that the best interest of the estate required that Beery be adjudicated a bankrupt. (See I R. 9; V R. 26-27). Beery did not make any argument nor point to any evidence to show that dismissal was in the best interest of the estate. Likewise, Beery now makes no such showing on appeal. Moreover, in the files the bankruptcy judge had before him, there was Beery’s admission of his inability to pay his debts as they matured and that his liabilities exceeded his assets *710 by over one million dollars. (I R. 1, 6). We conclude that there was no error in the finding that the best interest of the estate required the adjudication as a bankrupt.
We also reject Beery’s argument that he was denied procedural due process by the adjudication. Beery argues that he was involuntarily adjudicated a bankrupt without the procedure required for an involuntary adjudication, including affidavits from alleged creditors that debts are owed to them. (Brief of Appellant at 14-15). As we have shown, the Bankruptcy Act and Rules do not contemplate the use of the involuntary bankruptcy procedure in this situation. The only requirements are proper notice and hearing. This result is compelled not only by the statutes and rules cited, but also by 11 U.S.C. § 778(a)(2), which provides that on the entry of an order that a bankruptcy proceed, as was done here under Rule ll-42(b)(l), the proceeding “shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed ...” Beery cannot complain about this procedure since he voluntarily submitted to it by filing his Chapter XI petition on January 16,1976, which alleged that he was unable to pay his debts as they matured and that his liabilities exceeded his assets by over one million dollars. (I R. 1, 6).[3] See Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 125, 60 S.Ct.' 1,11, 84 L.Ed. 110; In re Trans-Pacific Corp., 76 F.Supp. 623, 624-25 (S.D. Cal.), aff’d, 166 F.2d 1021 (9th Cir.), cert, denied, 335 U.S. 815, 69 S.Ct. 32, 93 L.Ed. 370.
We conclude that the bankruptcy judge had jurisdiction to adjudicate Beery a bankrupt and to direct that the case proceed in straight bankruptcy, and that there was no error in these rulings.
III
Beery argues further that he was erroneously denied a jury trial on several issues. He claims he was entitled to a jury trial on the issue of whether he was a farmer, that he had a constitutional right to a jury trial even if no statutory right exists, and that resolution of the issue would determine whether he would be deprived of his constitutional right to own property. (Brief of Appellant at 24-25). Beery also claims that it was error to deny his request for a jury trial on the issues of insolvency and commission of an act of bankruptcy. He also says that the court erred in holding that he was insolvent and had committed an act of bankruptcy. (Brief of Appellant at 42-43). We find no merit in any of these arguments.
First, the right to a jury trial in bankruptcy proceedings is purely statutory. There is no constitutional right to such trial as bankruptcy proceedings are equitable in nature. Katchen v. Landy, 382 U.S. 323, 336-38, 86 S.Ct. 467, 476-77, 15 L.Ed.2d 391; In re Merrill, 594 F.2d 1064, 1067 (5th Cir. 1979); 2 Collier on Bankruptcy 226 (14th ed.).
Second, the Bankruptcy Act does not provide for a jury trial in these circumstances. 11 U.S.C. § 42(a) (1976) grants the right to a jury trial only to “[a] person against whom an involuntary petition has been filed” and then only on the issues of insolvency and commission of an act of bankruptcy.[4] Beery, however, is not a person against whom an involuntary petition was filed. As noted, 11 U.S.C. § 778(a)(2) (1976) provides that in such circumstances “the proceeding shall be conducted, so far *711 as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter was filed.” Thus a debtor who proceeds under Chapter XI and is subsequently adjudicated a bankrupt has placed himself in the same position as if he had filed a voluntary petition in bankruptcy. In re Trans-Pacific Corp., 76 F.Supp. 623, 625 (S.D.Cal.), aff’d, 166 F.2d 1021 (9th Cir.), cert, denied, 335 U.S. 815, 69 S.Ct. 32, 93 L.Ed. 370. Therefore, no involuntary petition was filed against Beery and he was not entitled to a jury trial under 11 U.S.C. § 42(a) (1976). Id., 76 F.Supp. at 624-25.
Third, we disagree with Beery’s contention that the bankruptcy judge and the district judge erred in finding that he was insolvent and had committed an act of bankruptcy. Our reasoning, however, is based on the fact that there was no material issue involving an act of bankruptcy or insolvency. As explained above, the proceeding is to be treated as one in voluntary bankruptcy. Neither an act of bankruptcy nor insolvency are issues in a voluntary bankruptcy proceeding. A voluntary petitioner may be solvent or insolvent. People’s Nat. Bank v. Foltz, 25 F.2d 295, 296 (6th Cir.); 1 Collier on Bankruptcy 579-582 (14th ed.). Thus the issue of insolvency was not material to the proceedings.
Nor is an act of bankruptcy material in a voluntary proceeding. 11 U.S.C. §§ 21 and 22 (1976) together spell out the requirements for becoming voluntary and involuntary bankrupts. While the commission of an act of bankruptcy is necessary to establish the status of an involuntary bankrupt, there is no such requirement with respect to voluntary bankrupts. The same can be said with respect to the rules specifying the requirements of bankruptcy petitions. A voluntary petition need not allege an act of bankruptcy. See Rule 103 and Official Form 1; 1 Collier on Bankruptcy 403, 582 n.7 (14th ed.). On the other hand, an involuntary petition must set forth facts constituting an act of bankruptcy with sufficient particularity to identify the transaction or occurrence. Rule 104(c).
In sum, we find no error in the denial of the requests for a jury trial. And since the findings on insolvency and commission of an act of bankruptcy were not necessary, there was no reversible error in making those findings.
IV
Beery argues that the district court erred in refusing to order that funds from the estate be used to pay his legal expenses associated with the bankruptcy proceedings. He says that it was unfair to refuse the allowance for his legal expenses when the trustee, who was acting as plaintiff during the September 1977 hearing, was paid from the estate for all his efforts, as were certain accountants who acted as assistants to the trustee. Beery contends that this ruling effectively denied him the right to counsel. (Brief of Appellant at 25-26).
The district judge denied Beery’s motion for legal expenses during the September 1977 hearing, stating that he had difficulty in finding any authority to grant legal expenses in this type of case. (VIII R. 16). We likewise find no authority under the bankruptcy statutes or rules for allowances of legal expenses in this situation.[5] Moreover Beery has no constitutional right to counsel, as such a right generally does not exist in a civil case. Bethea v. Crouse, 417 F.2d 504, 505 (10th Cir.); cf. Securities and Exchange Comm’n v. Alan F. Hughes, Inc., 481 F.2d 401, 403 (2d Cir.), cert, denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549. The fact that the trustee was given expense *712 allowances for his efforts may have given him an advantage, but it does not give rise to a right to be furnished counsel, where none exists.
V
Beery argues that the trial on the farmer issue should have been heard by the bankruptcy judge, not the district judge. He states that due process requires this procedure; that otherwise appellate review by the district court is eliminated from the judicial process; that the court cannot arbitrarily raise the trial one level because that reduces the number of available review proceedings in the appellate process. (Brief of Appellant at 16).
We disagree. Rule 102(b)[6] provides, inter alia, that the district judge may for the convenience of the parties or for other cause withdraw a case in whole or in part from the referee, the bankruptcy judge here,[7] and act himself. Here the bankruptcy judge recommended that the instant case be partially withdrawn for a de novo trial before the district judge on the farmer issue and stated it was unclear whether Beery had a constitutional right to trial by jury on this issue and if such a right existed, the bankruptcy court was not adequately staffed and equipped to conduct a jury trial. (I R. 13). The district judge followed this recommendation. (I R. 14).
We are convinced the district judge acted properly and with cause under Rule 102(b). We also conclude that Beery’s due process rights were not infringed. While due process includes the right to be heard, it does not include the right to be heard a specific number of times on appeal. In fact, even in criminal cases there is no federal constitutional right to appellate review of state convictions. See Estelle v. Dorrough, 420 U.S. 534, 536, 95 S.Ct. 1173,1175,43 L.Ed.2d 377; cf., Griffin v. Illinois, 351 U.S. 12, 20-21, 76 S.Ct. 585, 591-592, 100 L.Ed. 891 (Opinion of Justice Frankfurter, concurring in the judgment), (with negligible exceptions, no appeals in federal criminal cases were afforded for nearly 100 years).
VI
Beery claims error in that the trustee had an interest adverse to the estate. Beery points to the fact that the trustee, Dan . Turner, was the brother of and officed with an attorney for several of the creditors. Although Beery’s argument is unclear, he is apparently asserting that Turner’s close relationship with an attorney for several of the creditors disqualified him for the trustee position. (Brief of Appellant at 12).
This argument was not preserved for appeal to this court. In June 1977 Beery filed a motion to remove the trustee on these grounds. The motion was not ruled on by the bankruptcy judge prior to Beery’s notice of appeal filed in March 1978. The district court did not rule on this matter in either of the orders appealed; thus this claim of error is not before us. Moreover there is no foundation to Beery’s claim. While a trustee is prohibited from having an interest adverse to the estate, see Rule 209(d), no adverse interest is present here. For these purposes the estate is considered to be the receiver, the trustee, or the creditors. See Notes of Advisory Committee to Rule 215. Thus even if we assume that the trustee is aligned with the creditors, his interests are not adverse to the estate.
VII
Beery argues that the district court erred in ordering the trustee to serve as plaintiff for the hearing determining whether Beery was a farmer. He says the creditors, not the trustee, were the proper parties, that the trustee represents the estate and not the creditors, and that he should be a disinterested party concerned with preserving the assets for distribution to creditors, if *713 any of them have valid claims. Beery contends that there is no precedent for the trustee’s using the assets of the estate by serving in this manner. (Brief of Appellant at 19-20, 37).
We disagree. First, in disputes between the creditors and the bankrupt, the trustee is not always an impartial observer. The trustee is authorized to oppose, at the expense of the estate, the discharge of bankrupts when that is deemed advisable. 11 U.S.C. § 75(a)(9) (1976). Second, there is some authority to support the designation of the trustee as plaintiff. Bankruptcy Rule 610 provides:
The trustee or receiver may, with or without court approval, prosecute or enter his appearance and defend any pending action or proceeding by or against the bankrupt, or commence and prosecute any action or proceeding in behalf of the estate, before any tribunal.
While this rule permits the trustee to be on either side of the dispute at issue, we do not think the district judge acted improperly in designating the trustee to act as plaintiff. He had been overseeing the estate for over twenty months at the time of the hearing and thus had knowledge of many facts which would be helpful in determining Beery’s status as a farmer. This background information benefitted the creditors in the determination. We also note that in another Chapter XI case being converted to straight bankruptcy, the trustee served as the party opposing the bankrupt, at least at the appellate stage. In re Schoenburg, 279 F.2d 806, 807 (5th Cir.), cert, denied, 364 U.S. 923, 81 S.Ct. 290, 5 L.Ed.2d 262; but cf., In re Kutner, 656 F.2d 1107, 1110 (5th Cir.), review denied, - U.S. -, 102 S.Ct. 1443, 71 L.Ed.2d 658 (court of appeals did not reach similar issue under new bankruptcy code due to lack of jurisdiction).
We find no merit in the arguments on this issue.
VIII
Beery claims that the district court erred in concluding that he was not a farmer. As noted, Beery could not have been adjudicated a bankrupt under 11 U.S.C. § 779 (1976) and Rule ll-42(e) if he was a farmer. Beery attacks several of the court’s findings and conclusions contained in its order. He also argues that the evidence was wholly insufficient to support the court’s conclusion.
11 U.S.C. § 1(17) (1976) provides:
“Farmer” shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their un-manufactured state, if the principal part of his income is derived from any one or more of such operations.
Thus to be a farmer Beery must have been: (1) personally engaged in farming or tillage of the soil; and (2) the principal part of his income must have been derived from farming.
The court found that Mr. Beery “may have farmed several leased tracts,” (I R. 37), but did not make a specific determination as to whether Beery was personally engaged in farming or tilling the soil. The court concluded, however, that Beery was not a farmer as defined in § 1(17) because the principal part of his income was not derived from farming, but from the sale of grain other than that which he raised.
In reaching this conclusion the court looked to Beery’s “principal source of attempted or gross income, since if net income or profit could be shown the debtor would not be insolvent.” (emphasis in original) (I R. 39).. The court then concluded (I R. 39-40):
In the present case it is clear Mr. Beery’s principal attempt to make income did not involve his farming operations, but rather focused upon his grain and commodities dealings. His farming operations, extensive as they may have been, pale into insignificance when viewed in the context of his overall business pursuits. (emphasis in original).
Beery attacks these findings in two principal ways. First, he complains that the *714 court relied too heavily on the evidence concerning the cash flow of his farming operations and his grain business, the Brownville Grain Company. Beery would have us look to the net income of these respective pursuits, not to their revenues or cash flow. Beery would also have us focus on time and effort he expended and the amount of money he invested in the two pursuits. Further, Beery asserts that the evidence taken as a whole shows .the grain company produced no income during its one and one-half year existence immediately prior to these bankruptcy proceedings, while the farming operation produced $141,-562 over the same period. (Brief of Appellant at 33-42).
We conclude that the district court’s critical finding — that the trustee satisfied the burden of proof to establish that Beery did not meet the second part of the test — is not clearly erroneous. Thus we need only consider that part of the test, i.e., whether the principal part of Beery’s income was derived from farming. In that connection, Beery’s status as a farmer is determined as of the time he filed his Chapter XI petition in January 1976. 9 Collier on Bankruptcy 590 (14th ed.). On the other hand, evidence of Beery’s financial affairs prior to that date is relevant in determining Beery’s status.
In determining from which source Beery derived the principal part of his income, we agree with the district court that we should look at Beery’s principal attempt to make income. “Hence, the only common sense interpretation of this phrasing is to use the field or direction of principal attempt to make income, rather than the dollar-and-cents actual net income result, in the sense of profit, as a guide.” 1 H. Remington, Bankruptcy 131 (5th ed. 1950). The treatise and the district court would then look to Beery’s gross income, or the gross revenues or receipts from his respective pursuits.[8] See also 1 Collier on Bankruptcy 624 (14th ed.); contra, Sherwood v. Kitcher, 86 F.2d 750, 751 (2d Cir.), cert, denied, 301 U.S. 703, 57 S.Ct. 927, 81 L.Ed. 1357. There are valid reasons for using gross revenues or receipts in making this determination. If net income were used, an agricultural producer who operates at a loss because of drought or depressed market conditions would cease being a farmer entitled to the benefits of the Bankruptcy Act, if he had any net income from non-farming operations. In re Knight, 9 F.Supp. 502-03 (D.Conn.).[9] In addition, in many instances a bankrupt will not have much income from any source; otherwise he would not be before the bankruptcy court. There may be no net income to determine and the proper approach is to use gross revenues or receipts. See 1 H. Remington, Bankruptcy 131 (5th ed. 1950).
*715 On the other hand, net income may be a useful tool in certain cases. While failure of the farming enterprise does not negate the status of being a farmer, the failure over a period of years to receive any income from farming may indicate that the putative farmer is not really relying on farming as his principal source of income. In re White, 238 F.Supp. 454, 456 (D.Colo.). Likewise, a showing of positive net income in farming over several years, accompanied by a corresponding loss in other ventures, might indicate that farming was the principal source of income. Cf., Jenkins v. Petitioning Creditor — Ray E. Friedman and Co., 664 F.2d 184, 186-87 (8th Cir.).
Mr. Beery was involved in various activities in the five years prior to filing,his Chapter XI petition. During 1971 he moved to Colby, Kansas, from Los Alamos, New Mexico, where he had been employed as a research physicist for the previous twelve years. Beery had received a PhD in physics prior to taking the research position. When Beery moved to Kansas he purchased a one-half section of land which he farmed. (VIII R. 150). During the next four years the amount of land farmed by Beery increased. In 1975 Beery was apparently farming some 1600 to 1666 acres of which 880 to 1000 acres was irrigated. The non-irrigated acreage was apparently dry wheat land where a crop was attempted only every two years.[10]
Mr. Beery was also involved in other revenue producing activities from 1971 to 1975. Beery taught physics at Colby County Junior College for three semesters during 1972 and 1973. He owned and operated the Colby branch of Mayer-Gelbort, a commodities firm, from March 1974 until September 1975. Beery took orders from customers and transmitted the orders to the Chicago main office.
Of more relevance, however, are two other activities that Beery was involved in up until his Chapter XI petition was filed. In July or August of 1974, Beery commenced the operation known as Brownville Grain Company, an unincorporated enterprise wholly owned by Beery. Brownville Grain bought grain from farmers and occasionally from a grain elevator, transported it by truck to different locations, sold it for cash, and paid the farmers. The price paid the farmers was set in two ways: either a fixed price was determined at the time of contracting, or the farmer was given the option of setting the price on a date to be chosen by the farmer in the future. Under the latter arrangement, the price would be determined by the market price on the day chosen by the farmer. (VIII R. 30-32, 46-47).
Beery was also heavily involved in commodities trading on his own behalf. (VIII R. 34). Mr. Criss, one of the accountants testifying for the trustee, stated that some of this investment may have been “hedging” on Beery’s part. Beery would buy grain in the commodities market to protect himself from farmers who had sold grain to Brownville Grain and who would then set the price to be paid at a time when the market price has risen from the time Brownville Grain had sold this grain. The accountants testified that Beery also invested in other commodities besides grain, including silver, hog bellies, molasses, potatoes, beans, live cattle, bean oil, gold and sugar. (VIII R. 464-65, 520-22).
Most of the evidence as to the revenues and income from Beery’s various pursuits came from these accountants, evidence summarized in plaintiff’s exhibit 30. The *716 accountants had spent over 300 hours in an attempt to construct and compile records showing this information, as the records kept by Beery were inadequate for this purpose. According to the accountants these limited records were insufficient for them to use accrual basis accounting, but they were able to use cash basis accounting in reconstructing Beery’s records.[11] The accountants obtained missing cancelled checks and bank statements, and attempted to make the cash receipts and disbursement records by tracing the flow of money in and out of Beery’s checking accounts. (VIII R. 255, 261-63). The accountants testified that the records were insufficient to allocate income and expenses with a great deal of actuality between the farm, Brownville Grain and Mayer-Gelbort, but that it was possible to make some pretty good educated guesses. (VIII R. 252).
With respect to gross revenues or receipts, the accountant’s evidence shows that in 1974 Beery received $287,498 from farming and ranching, and $693,160 from Brownville Grain and his various commodities pursuits. In 1975 Beery received $7,000,858 from Brownville Grain and commodities. (I R. 64, 69). The accountants were not able to identify any grain sales from Beery’s farm for 1975, but assumed that it was sold by Brownville Grain. Based on the amount of acreage Beery was farming, see note 10 and accompanying text, supra, they estimated that Beery received $293,838 in grain sales. Based on this assumption Beery’s total receipts from farming and ranching activities in 1975 would be $330,141. (I R. 69, 72; VIII R. 279-280, 282-87, 315-16).
As to net income, the evidence shows that in 1974 Beery made $43,701 from farming and ranching,[12] and $55,759 from Brown-ville Grain and other commodities activities. In 1975 the evidence is much less precise. The accountants could not determine the amount of Beery’s grain sales, but estimated .that they were $293,838. Using this number, as well as some other assumptions, Beery had an estimated net loss from farming of $23,000 (I R. 72; VIII R. 292-296, 315-16). Making similar assumptions with respect to Brownville Grain and commodities pursuits, the accountants estimated that Beery had a net loss from these ventures of $1,517,999. In making these estimates the accountants assumed that all claims filed against Beery in the bankruptcy court, and all receivables to which the estate thought it was entitled were valid. (I R. 132; VIII R. 372-76, 416-19, 443-44). *717 Thus the net income figures for 1975 must be considered as rough estimates.[13]
Based on gross revenues or receivables, we cannot say the trial court’s finding that Beery did not meet the test of being a farmer under § 1(17) was clearly erroneous. There is evidence that Beery received over twice as much money in non-farming active ties in 1974 and over 20 times as much in 1975 as he did from farming and ranching operations. On appeal Beery asserts that the profit margin for Brownville Grain was expected to be small, and that we should not be swayed by the large cash flow. The expected profit margin would certainly be a relevant factor, but no evidence was introduced to support Beery’s assertion. Thus we cannot consider it here.
The net income figures are not helpful in determining the activity from which Beery attempted to make his principal income. The 1975 figures are very speculative and at most show that Beery suffered huge losses in his Brownville Grain and commodities dealings. The 1974 numbers show a relatively equal net profit in the farming and non-farming ventures. There is not a long period of time where consistent profit or loss is made in one area,[14] nor is the information otherwise persuasive. Thus the trial court did not err in relying on gross revenues or receipts and in not considering net income in determining whether Beery was a farmer.
As noted, Beery would also have us consider the amount of money and time he invested in the various ventures. These factors, however, are generally not used in this determination, and are used only in close cases where the income and revenue factors do not lead to a conclusion. 1 Collier on Bankruptcy 623 (14th ed.). This is not the case here. Gross revenues or receipts sufficiently support the finding that Beery was not a farmer. Thus the district court’s finding is not clearly erroneous.
IX
Beery further argues that the district court improperly admitted several items of evidence during the 1977 hearing.
A
First, Beery says that plaintiff’s exhibits 2 and 3, depositions of Beery and of Patsy Owens (see Volumes IX and X), should not have been admitted because they were unsigned and unverified. (Brief of Appellant at 27). These depositions were taken in a state receivership action instituted against Beery by several of his creditors. Neither of the depositions was signed by the deponent nor certified by the court reporter. These appear to be defects under the Kansas and Federal Rules.[15]
We find that any error in admission of the depositions was harmless. We have examined Beery’s deposition and can find no testimony contained therein relevant to the issues of the September 1977 hearing that was not introduced as evidence in another form during the September 1977 *718 hearing. Moreover the district court made extensive findings and conclusions in which he discussed the evidence relied on, making no mention of either deposition. We are satisfied the admission of the depositions was harmless error, if any error occurred.
B
Further objection is made to the depositions of Mr. William C. Stein and Mr. Billy J. Deane. Beery objects that he did not have proper notice of the taking of the depositions, and this point would appear well taken.
Again, however, we find that any error was harmless. The court never indicated a ruling on the admission of the depositions after objections were made and no reference was made to the deposition evidence in the court’s findings and conclusions. Thus any error on the matter was harmless.
C
Beery claims that the district court erred in admitting the testimony of two certified public accountants and in admitting plaintiff’s exhibit 30, which summarized the accountants’ testimony.
Beery argues that the accountants gave perjured testimony, which should not have been admitted. He points to several internal inconsistencies in the accountants’ testimony and to inconsistencies between their testimony and that of other witnesses. He also argues that this evidence was incomplete and inconclusive, that the accountants admitted that they had made educated guesses, that there was no way to allocate income and expenses to the Brownville Grain Co., and that exhibit 30 was an incomplete preliminary interim report which was unaudited and not certified. (Brief of Appellant at 31-32). All these arguments, however, go to the weight of the evidence, not to its admissibility. We see no error.
Beery also argues that this evidence was inadmissible because it was speculative. (Brief of Appellant at 32). We feel the certified public accountants were experts, and such witnesses qualified by their knowledge, skill, experience, training or education may testify in the form of opinion or otherwise. Fed.Rules Evid.Rule 702. We conclude that the evidence came within the rule and that no error in the ruling is shown.
D
Beery claims that the district court erred in compelling him to testify over his Fifth Amendment objections without the grant of immunity that goes with such compulsion. We view this as two alternative arguments. First, he says the court erred in compelling him to testify. Alternatively, if the court could order Beery to testify, he argues that the court erred because he was compelled to testify without a protective order that the compelled testimony not be used against him in the future. Beery relies on § 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10) (1976). (Brief of Appellant at 28-30). This statute provides in part:
§ 25. Duties of bankrupts
(a) The bankrupt shall . . .
$$$$$$
... (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge .... (Emphasis added).
For reasons that follow, we feel that this statute is of controlling importance on this issue. We must decide whether Beery came *719 within the protection of the statute because he was ordered to submit to an examination on matters which may affect “the administration and settlement of his estate,” etc., so that he was afforded the statutory immunity against use of his testimony and evidence derived from it. And if he obtained the statute’s immunity, we must decide whether this avoided any infringement of his Fifth Amendment rights.
Beery claimed a constitutional right not to answer questions twice during the September 1977 hearing, which concerned the farmer issue. Beery was in attendance at the hearing; the record does not show whether he was under a subpoena. The trustee called him to the stand. Beery gave no response when asked his name. The district judge stated (VIII R. 24):
THE COURT: Yes, Mr. Beery, I would suggest that it is necessary that you answer the questions. I’ll direct you to do so. (Emphasis added).
The trustee responded to Beery’s objections by stating that Mr. Beery had answered certain questions during earlier “depositions and hearing on a 205 examination,” and had thus waived his Fifth Amendment right. The trustee was apparently referring to testimony given by Beery in a deposition taken in January 1976 in a state court receivership action that had been filed against Mr. Beery and during a Rule 205 examination on assets in this bankruptcy proceeding taken in February 1976. Beery responded that the circumstances had changed from the dates of his earlier testimony because a criminal contempt matter was then pending against him. Beery refused to answer the trustee’s questions on the ground that “it may tend to incriminate me” and further stated he intended to assert his “constitutional rights and to refuse to answer any and all questions put to me by Mr. Turner.” (VIII R. 25-26). The trial court then stated that (VIII R. 26-27):
... if you have answered these questions before, you have waived your right to claim a constitutional right to decline. If there are any questions that come up that you wish to call to the Court’s attention that may in some way incriminate you then the Court will take those individually, but I must advise you that it is necessary that you answer the questions that are now propounded to you. (Emphasis added).
In short, when he was called to the stand and questioned Beery remained mute, he later stated that he refused to answer any and all questions, he said answering might tend to incriminate him, and he was directed by the court to respond. We conclude that Beery was clearly ordered to submit to the examination and thus came within the protection of the statute.[16]
We cannot accept Beery’s claim that there was an infringement of his Fifth Amendment rights by the district court’s directions requiring him to answer the *720 questions at the September 1977 hearing.[17] Under the Bankruptcy Act, a bankrupt could be compelled to testify without any violation of the Fifth Amendment, there being an immunity granted by the statute from the use of the compelled testimony and evidence derived therefrom. See 11 U.S.C. § 25(a)(10) (1976); United States v. Seiffert, 463 F.2d 1089, 1091 (5th Cir.); 1A Collier on Bankruptcy 1016.4-1016.5 (14th ed.).[18] The statutory procedure for compelling the testimony' and the statute’s grant of immunity protected Beery’s constitutional privilege. See Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212.[19]
We further find no merit in Beery’s argument that the court erred in not making an express grant of immunity at the time his answers were compelled. The protection granted by 11 U.S.C. § 25(a)(10) is not dependent on affirmative action by the bankruptcy judge or the district court. The statute itself provides that “no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding .. Thus Beery was granted immunity independently by the statute and is protected by that grant of immunity. In sum, no infringement of Beery’s Fifth Amendment privilege is demonstrated.
X
As noted, there is also pending a “Complaint and Petition for Injunctive Relief” in No. 80-1577, requesting that we enjoin the transfer or disposition of certain property, pending appeal. We have concluded there was no reversible error in the bankruptcy proceedings and are not persuaded that any injunctive relief was or is proper.
In Nos. 77-1991 and 78-1758, we have considered the remaining contentions of appellant Beery and find that they are without merit, as we did the contentions discussed above.[20] Accordingly, No. 80-1577 is dismissed, and in Nos. 77-1991 and 78-1758, the orders appealed from are affirmed.

. Beery’s motion to reconsider was not included in the record on appeal, but we presume from the course of the proceedings that Beery claimed therein that he was a farmer.

. The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, § 401, 92 Stat. 2682, U.S.Code Cong. & Admin.News 1978, p. 5787, generally effective *709 October 1, 1979. Id. § 402. Beery filed his petition under Chapter XI on January 16, 1976. Thus, this case is governed by the old Act. See id. § 403, 92 Stat. 2683; In re Stafos, 666 F.2d 1343, 1345 n.l (10th Cir.).

. Although Beery argues that he was coerced into signing his Chapter XI petition, there is no evidence in our record to support this assertion. Beery states that there is support in an affidavit he filed on November 4, 1977. This affidavit, however, was not made part of the record on appeal. Moreover, it was filed after the district court’s order of October 5, 1977, and the bankruptcy court’s order of October 21, 1977, which was affirmed by the district court on March 3, 1978. Under these circumstances we will not consider this allegation.

. Because 11 U.S.C. § 42(a) is limited to these issues, Beery would not be entitled to a jury trial on the farmer issue even if an involuntary petition had been filed against him. See 2 Collier on Bankruptcy 225 (14th ed.).

. We note that 11 U.S.C. § 104(a) permits the payment of one reasonable attorney’s fee for professional services actually rendered to the bankrupt in such amount as the court may allow. Legal services whose purpose is to defeat adjudication, however, are not compensa-ble under this section. See In re Evenod Perfumer, Inc., 67 F.2d 878, 879 (2d Cir.), cert, denied, 291 U.S. 671, 54 S.Ct. 455, 78 L.Ed. 1060; 3A Collier’s on Bankruptcy 1602 and n.17, 1610-11 nn. 46 & 51 (14th ed.).

. Rule 11-5 provides that Rule 102 applies in Chapter XI cases.

. Rule 901(7) provides that the term “bankruptcy judge” means the referee of the court of bankruptcy, or the district judge when he acts in lieu of a referee. Thus the reference in Rule 102 to the referee includes the bankruptcy judge.

. While neither the district court nor the treatise define “gross income”, we believe they would look to the gross revenues or receipts Mr. Beery received from his various pursuits, and not subtract certain expenses including cost of goods sold to obtain those figures. While this result is inconsistent'with the definitions offered by the accountants in this case, (see VIII R. 412-13), it does comport with the interpretation given certain cases in Collier’s treatise. Compare 1 Collier on Bankruptcy 624 (14th ed.) with In re Wright's Estate, 17 F.Supp. 908, 909 (W.D.La.); and In re Knight, 9 F.Supp. 502 (D.Conn.). Moreover, this result is supported by the reasons given for looking to gross revenues or receipts, which are’discussed in the text.
We note that the definition of farmer has been amended under the new Bankruptcy Code to provide (11 U.S.C. § 101(17)):
“[F]armer” means person that received more than 80 percent of such person’s gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person;
We do not apply this definition here nor do we seek to define the term “gross income” used therein. But see 26 U.S.C. § 61. As noted, this case is governed by the old Act, under which we conclude that gross revenues or receipts is a proper standard.

. While this case interpreted a different definition of farmer, which was contained at § 75(r) of the Bankruptcy Act, 11 U.S.C. § 203, but was omitted from Title 11 prior to this action, the cases interpreting this section are regarded as authoritative in determining the source of the principal part of a debtor’s income under 11 U.S.C. § 1(17). 1 Collier on Bankruptcy 624 n.43 (14th ed.).

. The trial court found that Beery may have farmed six or seven quarter-sections of 160 acres each in the years 1974 and 1975. (I R. 37). Beery complains on appeal that he farmed ten and one-half quarters including over one thousand acres of irrigated land. (Brief of Appellant at 33). The alleged inaccuracy is not significant. The numbers given by the court are not that far off, if you consider Beery’s non-irrigated land to be productive only every two years. Under these circumstances the evidence shows that Beery would have farmed between 1273 and 1300 productive acres. While the district court states that Beery was farming 960 to 1120 acres, we do not believe the difference is significant. This is especially so as the critical evidence is not how much land Beery farmed, but how much revenue was produced.

. On appeal, Beery takes issue with the district court’s finding that Beery did not maintain detailed account records of income and expenses which would allow accrual base accounting, and another statement of the court concerning the inadequacy of records kept by Beery. (Brief of Appellant at 33-34, 37). Given the state of the records and the testimony of the accountant concerning the records needed for accrual basis accounting, (see VIII R. 249-51, 262-63), we accept the findings of the district court.
Beery also points to certain records not used by the accountants including check registers, contract logs and scale tickets, and argues that these records would have shown that Brown-ville Grain was a financially unprofitable venture. Beery also points out that the accountants did not consult Patsy Owens, Brownville Grain’s record keeper. While these facts may be relevant in determining the probative weight to be given the accountant’s testimony, they do not make the testimony inadmissible.
Moreover, Beery was free to use these records affirmatively to prove he was a farmer. He did not, however, use them below, nor does he point to them on appeal except in making the assertion noted above.
Finally we note that there was evidence that both the contract logs and the check registers were incomplete. (See, e.g., VIII R. 456-57, 497-502).

. As to this item, we feel the accountants’ summary exhibit 30 should be treated as showing a net income from farming and ranching of $43,701 for 1974, although the district judge found that there was an unspecified loss in farming operations for 1974. (Finding No. 10,1 R. 38). Apparently the trial judge accepted the negative cash flow figure from the accounting summary, while we feel that a profit of $43,701 is indicated because that figure is shown on the exhibit as “Net Income Resulting from [Farming] Cash Transactions.” This does not persuade us that the court’s ultimate finding and conclusions are in error, however, or that the judge would have reached a different conclusion if he had made subsidiary findings showing a profit by the 1974 farming operation of Beery.

. Beery argues on appeal that the accountants used the numbers incorrectly in determining net income. (Brief of Appellant at 39-42). He claims that the farm received $43,701 in income in 1974. This is the figure we have stated above. Beery claims that the accountants did not estimate Brownville Grain’s income for 1974, but ignores the fact that income for Brownville Grain and other commodity activities was estimated as shown above. For 1975 farming income, Beery argues that the farm made $97,861. He apparently came up with this number by adding the estimated farm income to a “subtotal” the accountants had reached in determining net cash flow, a number totally unrelated to net income. (See I R. 69). Beery also apparently chose not to reduce income by the amount of any claims pending against the bankruptcy estate that had been allocated to the farm, (see I R. 72; VIII R. 292-296), and not to use a revised calculation of farm revenue made by the accountants during the hearing. (See VIII R. 315-16).
In sum, Beery’s arguments concerning the figures are not persuasive.

. There was very little evidence as to Beery’s net income in years prior to 1974.

. See K.S.A. § 60-230(e) and (f); Fed.R.Civ.P. 30(e) and (f).
Fed.R.Civ.P. 30(e) applies in all proceedings to vacate an adjudication. Bankruptcy Rules 121, 730.

. We note that the immunity provided in § 25(a)(10) has not been granted to bankrupts in all bankruptcy proceedings where the bankrupt testified. E.g., White v. United States, 30 F.2d 590, 592-93 (1st Cir.), cert. denied, 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1008; Goldstein v. United States, 11 F.2d 593 (5th Cir.), cert. denied, 271 U.S. 667, 46 S.Ct. 483, 70 L.Ed. 1141. In White, however, the bankrupt had apparently appeared and testified voluntarily. In Goldstein, the court stated that the policy of the law was not to extend the immunity to a bankrupt who was merely called as a witness in a proceeding in which it was not made his duty to testify. 11 F.2d at 594. There the bankrupt had given testimony during a hearing held for him to show cause why he should not deliver certain property to the trustee. The court stated that it was immaterial whether the bankrupt was called to the stand by the trustee or took the stand voluntarily, and noted that the bankrupt did not raise his Fifth Amendment privilege. The court said that the defendant was under no duty to testify. Id. at 594.
We do not feel that the White or Goldstein cases require the denial of the protection of § 25(a)(10) here. Beery was called to the stand by the trustee and questioned about matters that might affect the “administration and settlement of his estate.” See § 25(a)(10). The judge ordered Beery to testify over Beery’s refusal to “answer any and all questions put to me by Mr. Turner.” (VIII R. 25-27). Under these circumstances Beery was entitled to the immunity.

. We do feel that the district court erred in stating that Beery had waived any constitutional privilege by having answered questions at the state court deposition. The waiver of the Fifth Amendment privilege in these circumstances is limited to the particular proceeding in which the witness gave the testimony, but does not extend to a separate and independent proceeding. United States v. Johnson, 488 F.2d 1206, 1210 (1st Cir.); 8 J. Wigmore, Evidence 470-72 (1961); McCormick, Evidence 281, 296-99; Annot., 42 A.L.R.Fed. 793, 795. While the state court receivership may have involved issues similar to those in this bankruptcy case, they are different proceedings. Thus Beery was not barred from asserting the privilege as to questions answered during the state court deposition. Ionian Shipping Co. v. British Law Insurance Co., 314 F.Supp. 1121, 1124 (S.D.N. Y.).
The authorities are less clear as to whether Beery was barred from asserting the privilege as to questions answered during the Rule 205 examination. We do not reach this issue, as we hold that Beery could be compelled to answer questions at the September 1977 hearing, even after a valid assertion of the privilege.

. The new Bankruptcy Code repealed § 25(a)(10). The procedure is now set forth in 11 U.S.C.A. § 344 (1979). This section carries 18 U.S.C.A. § 6001 et seq. over into bankruptcy cases. For a witness to be ordered to testify before a bankruptcy court over the assertion of his Fifth Amendment privilege, the United States attorney for the district in which the court sits would have to request from the district court for that district an immunity order. The rule would apply to any witness in a bankruptcy case. If the immunity were granted, the witness could be required to testify. If not, he could claim his privilege against self-incrimination. See Notes of Committee on the Judiciary, Senate Report No. 95-989, 11 U.S.C.A. at p. 366.

. See the more extended discussion of the constitutional problem in United States v. Beery, 678 F.2d 856 (1982).

. We note that there is a claim by Beery that the courts below improperly ignored his affidavits to disqualify the bankruptcy judge and the district judge. Beery filed the affidavits in April 1978 after his last notice of appeal was filed. (I R. 177-78). Thus the courts below could not have considered the affidavits prior to the orders appealed from. Furthermore the affidavits are not in our record. We thus have nothing to review on this issue.